| | | |
|---|---|---|
| reFX AUDIO SOFTWARE INC., | ) | |
| | ) | |
| Plaintiff, | ) | Nos.   13 C 01790 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| DOES 1-85, | ) | |
| | ) | |
| Defendants. | ) | |
| | | |
| reFX AUDIO SOFTWARE INC., | ) | |
| | ) | |
| Plaintiff, | ) | Nos.   13 C 01793 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| DOES 1-80, | ) | |
| | ) | |
| Defendants. | ) | |
| | | |
| reFX AUDIO SOFTWARE INC., | ) | |
| | ) | |
| Plaintiff, | ) | Nos.   13 C 03524 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| DOES 1-180, | ) | |
| | ) | |
| Defendants. | ) | |
| | | |
| reFX AUDIO SOFTWARE INC., | ) | |
| | ) | |
| Plaintiff, | ) | Nos.   13 C 07494 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| DOES 1-39, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff reFX Audio Software Inc. has filed these four copyright-infringement lawsuits, suing in total nearly 400 John Does.[1] *See* R. 1 (Nos. 13 C 01790, 13 C 01793, 13 C 03524, 13 C 07494), Compls. ¶¶ 1, 57 (raising claims of copyright infringement and contributory copyright infringement under the United States Copyright Act of 1976, 17 U.S.C. § 106, as well as claims of civil conspiracy). Early in these lawsuits, the Court granted reFX leave to issue non-party subpoenas to the Does' Internet service providers (ISPs) to ascertain the Does' identities. R. 12 (No. 13 C 01790); R. 12 (No. 13 C 01793); R. 15 (No. 13 C 03524); R. 13 (No. 13 C 07494). Before the Court now are three related motions: (1) reFX's motion to compel AT&T, the ISP for a set of Does, to comply with a subpoena to identify the Does [R. 15 (No. 13 C 01793)]; (2) AT&T's opposition to the motion to compel [R. 36 (13 C 01793)], which the Court views as a motion to quash; and (3) three Does' motions to quash the subpoenas or, in the alternative, to sever because of improper joinder [R. 20, R. 24 (No. 13 C 03524); R. 23 (No. 13 C 07494)]. For the reasons explained below, the Does' motions are granted because joinder is improper, and reFX's motion to compel and AT&T's motion to quash are therefore denied without prejudice as moot, with the possibility of re-serving the subpoenas after proper narrowing of the Doe Defendants.

---

[1]The Court has subject matter jurisdiction over this case based on 28 U.S.C. §§ 1331 and 1338(a).

# I. Background

reFX alleges that all of the Does in these lawsuits unlawfully copied and distributed its copyrighted computer software using BitTorrent. R. 1 (No. 13 C 03524), Compl. ¶ 4.[2] BitTorrent is a popular file-sharing technology. *Id.* ¶¶ 4, 42. Unlike earlier file-sharing programs that required users to download a file from a single source computer, BitTorrent speeds up the file-sharing process by allowing users to simultaneously download different pieces of a single file from multiple source computers. *See id.* ¶¶ 7, 42. This process begins with an initial BitTorrent user, or "seeder," who already has a complete copy of a computer file. *See id.* ¶ 50. After the seeder installs the BitTorrent program on the seeder's computer, the seeder then uses BitTorrent to create a "torrent file" that contains a unique "hash" identifier. *See id.* ¶¶ 43, 45-46. The seeder then uploads the torrent file to a torrent site. *See id.* ¶ 45. These sites index the torrent files that are currently available from other users for copying and distribution. *Id.* Although a torrent file does not contain the actual content of the original computer file, the torrent file acts as a "roadmap" to the Internet Protocol (IP) addresses of other users who are also sharing the file with the same unique hash identifier. *Id.* ¶¶ 45-46. Along with the hash identifier, a BitTorrent "tracker" helps manage file distribution by connecting uploaders (those who are distributing the file content) with downloaders (those who are copying the content). *Id.* ¶ 47. The tracker simply directs a user's computer to

---

[2]The complaints that reFX filed in these four lawsuits are substantively identical. Therefore, for simplicity's sake, the Court will cite only to the complaint filed in case number 13 C 03524 unless otherwise noted.

other users' computers that have the wanted file and then facilitates the data exchange between the computers. *See id.*

As soon as a seeder creates and uploads a torrent file onto a torrent site, other BitTorrent users, or "peers," can download the computer file to which the torrent file is linked. But these users cannot download the computer file unless they also agree to simultaneously make available for upload the parts of the file that already exist on their computers. *See id.* ¶ 48. In other words, according to the complaint, every downloader is simultaneously a potential uploader. *See id.* ¶¶ 15, 48. As soon as a user downloads even just a piece of the original computer file, BitTorrent simultaneously makes that particular piece available to other users who want to download the same computer file. *See id.* ¶¶ 16, 48, 51. In this way, users are simultaneously downloading and potentially uploading multiple pieces of the file from multiple other users. *See id.* ¶¶ 51-52.

BitTorrent users use the word "swarm" to describe the group of users who are downloading and uploading the same file. *See id.* ¶ 7. As more users join a particular swarm, both the downloading speed and the likelihood of successfully downloading the complete file increase. *See id.* ¶¶ 16, 19, 53. Once the seeder has distributed each piece of the computer file to at least one other user, the seeder can leave the swarm. *See id.* ¶ 51. The remaining swarm members can still obtain a full copy of the file by exchanging the pieces of the file that the other users have already downloaded. *See id.* In the end, a user may download a file in hundreds or even thousands of individual pieces, and each piece may come from a different swarm

member. *Id.* ¶ 52. Once a user has downloaded the entire computer file, BitTorrent reassembles the pieces of the file and then the user can use the file on his or her computer. *See id.* ¶ 51.

reFX alleges that all of the Does in these lawsuits were BitTorrent users. *See id.* ¶¶ 4-5, 12, 24. According to reFX, each of the Does participated in the same BitTorrent swarm to copy and distribute reFX's Nexus 2, Nexus 2.2.0, and Nexus 2.2.1 software, identified by the hash identifier 68EA. *See id.* ¶¶ 5-6, 13, 34, 58, 60, 74. This copyrighted software is a synthesizer-plugin program that is used in combination with professional music software to generate over 1,000 preset sounds and music. *Id.* ¶¶ 4, 33, 35-39. According to the complaint, different versions of the software range in price from $299 to $2,589. *Id.* ¶ 40. In these lawsuits, reFX has chosen to limit the Does to members of the same swarm who downloaded the software in the Northern District of Illinois during a one-month period. *See id.* ¶ 8. At this point in the litigation, reFX has identified the Does only by their IP addresses, which are listed in reFX's Exhibit A. *Id.* ¶¶ 28-29; R. 1-1 (No. 13 C 03524), Pl.'s Exh. A.

Shortly after filing complaints in these four lawsuits, reFX filed *ex parte* motions for early discovery, seeking leave to serve non-party subpoenas upon the unidentified Does' ISPs so that it could learn the Does' true identities. R. 9 (No. 13 C 01790); R. 9 (No. 13 C 01793); R. 6 (No. 13 C 03524); R. 9 (No. 13 C 07494). The Court granted these motions. R. 12 (No. 13 C 01790); R. 12 (No. 13 C 01793); R. 15 (No. 13 C 03524); R. 13 (No. 13 C 07494). Subpoenas were then issued to the Does'

ISPs, including AT&T and Comcast, requiring them to provide reFX with the Does' names, addresses, email addresses, and Media Access Control numbers. *See* R. 27 (No. 13 C 03524), Pl.'s Resp. Br. Opp'n Does' Mot. Sever at 3; *see also, e.g.*, R. 16-1 (No. 13 C 01793), Pl.'s Exh. A, AT&T Subpoena. After AT&T received the subpoena, it refused to comply with the request. *See* R. 16-3 (No. 13 C 01793), Pl.'s Exh. C. This prompted reFX to file a motion to compel, and AT&T retorted with a motion to quash. R. 15 (13 C 01793), Pl.'s Mot. Compel; R. 36 (No. 13 C 01793), AT&T's Mot. Quash. Comcast also refused to comply and sent letters to its customers informing them about the subpoena. Pl.'s Resp. Br. Opp'n Does' Mot. Sever at 3. In response to these subpoenas, three Does have filed motions to quash and also to sever the claims against them because of improper joinder. R. 20 (No. 13 C 03524), Doe 51's Mot. Sever & Quash; R. 24 (No. 13 C 03524), Doe 42's Mot. Sever & Quash; R. 23 (No. 13 C 07494), Doe 5's Mot. Quash. The Court turns to those joinder issues below.

## II. Legal Standard

Federal Rule of Civil Procedure 20(a)(2) dictates when a complaint may join two or more defendants in one case. Specifically, a plaintiff can join two or more defendants in a single lawsuit if two requirements are met: (1) "any right to relief is asserted against [the defendants] . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and (2) "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Joinder promotes judicial efficiency, *Elmore v. Henderson*, 227 F.3d

1009, 1012 (7th Cir. 2012), and is strongly encouraged, *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). Although the Rules do not define "transaction or occurrence," courts have generally adopted a "logical relationship" test. *See, e.g.*, *In re EMC Corp.*, 677 F.3d 1351, 1358 (Fed. Cir. 2012) ("[I]ndependent defendants satisfy the transaction-or-occurrence test of Rule 20 when there is a logical relationship between the separate causes of action. The logical relationship test is satisfied if there is substantial evidentiary overlap in the facts giving rise to the cause of action against each defendant."); *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974) ("[A]ll 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence."); *cf. also Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 610 (1926) (explaining in the context of Rule 13(a) compulsory counterclaims that the word "'[t]ransaction' . . . may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship").

The Seventh Circuit has recognized that district courts have broad discretion in deciding whether to sever a party for improper joinder. *Chavez v. Ill. State Police*, 251 F.3d 612, 632 (7th Cir. 2001) (citing *Intercon Research Assocs., Ltd. v. Dresser Indus., Inc.*, 696 F.2d 53, 56 (7th Cir. 1982)); *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000). District courts may even sever the claims against multiple parties *sua sponte*. *See* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever

any claim against a party."). Furthermore, in addition to the two Rule 20(a) requirements, courts may consider "'other relevant factors in a case in order to determine whether the permissive joinder of a party will comport with the principles of fundamental fairness.'" *Chavez*, 251 F.3d at 632 (quoting *Intercon Research Assocs.*, 696 F.2d at 58). For example, joinder may be improper if it "would create prejudice, expense or delay." *Id.* (internal quotation marks and citation omitted). If the Rule 20(a) test is not satisfied or if there are other factors that make joinder improper, then the district court can sever the claims against the defendants under Rule 21. *See Lee v. Cook Cnty.*, 635 F.3d 969, 971 (7th Cir. 2011); *Elmore*, 227 F.3d at 1012; *see also* Fed. R. Civ. P. 21 ("Misjoinder of parties is not a ground for dismissing an action.").

## III. Analysis

Three Does have moved to sever the claims against them, each arguing that joinder is improper because reFX's claims against them do not arise out of, in the words of Rule 20(a), the same transaction, occurrence, or series of transactions or occurrences. First, Doe 51 argues that he was improperly joined because reFX has not alleged that Doe 51 participated in the swarm at the same time as any of the other Does joined in the lawsuit. Doe 51's Mot. Sever & Quash at 2-3. As a result, Doe 51 believes there can be no inference that Doe 51 exchanged any data with any of the other Does. *Id.* at 3. Doe 51 also stresses that because there are 180 defendants joined in that lawsuit, defendant-specific questions of law or fact will likely outweigh the efficiencies to be gained from joinder. *See* R. 30 (No. 13 C

03524), Doe 51's Reply Br. at 2. Second, Doe 42 raises similar arguments, emphasizing that reFX alleges that only two other Does were part of the swarm on the same day as Doe 42, but none at the same time. Doe 42's Mot. Sever & Quash at 7. Doe 42 also argues that reFX's evidence does not demonstrate that Doe 42 exchanged any part of the file with any other Doe in the lawsuit. *Id.* Finally, Doe 5 argues that joining multiple Does in a single lawsuit "runs the tremendous risk of creating unfairness and denying individual justice to those sued." Doe 5's Mot. Quash at 2.

District courts—both in this District and others—are split over the issue of whether defendants may be joined in a single lawsuit based solely on their participation in the same BitTorrent swarm. *See Malibu Media, LLC v. John Does 1-6*, 291 F.R.D. 191, 203 (N.D. Ill. 2013) (listing cases); *Malibu Media, LLC v. Reynolds*, No. 12 C 06672, 2013 WL 870618, at *9-10 (N.D. Ill. Mar. 7, 2013) (same). The heart of this debate centers on whether a swarm of users downloading a file with the same hash identifier qualifies as "the same transaction, occurrence, or series of transactions or occurrences" under Rule 20(a)(2)(A). At one end of the spectrum, some judges in this District have held that Rule 20 joinder is appropriate only in narrow circumstances where the swarm members were simultaneously present in the swarm or accessed the swarm close in time with each other. *See, e.g.*, *Reynolds*, 2013 WL 870618, at *13; *Zambezia Film (Pty) Ltd. v. Does 1-33*, Nos. 13 C 01323, 13 C 01741, 2013 WL 1181587, at *2 (N.D. Ill. Mar. 20, 2013) ("[J]udges should require plaintiffs to plead facts sufficient to show that the defendants were

not only part of the same swarm, but that they were part of the same swarm *at the same time as one another*." (citation omitted)); *Sunlust Pictures, LLC v. Does 1-75*, No. 12 C 01546, 2012 WL 3717768, at *4 (N.D. Ill. Aug. 27, 2012) (holding that joinder was appropriate only because the plaintiff alleged that the defendants simultaneously participated in the same swarm). At the other end of the spectrum, other district-court judges have held that joinder is proper whenever plaintiffs allege that the defendants participated in the same swarm, no matter how long the swarm lasts. *See, e.g.*, *Malibu Media, LLC*, 291 F.R.D. at 204 ("It suffices for joinder that defendants indirectly interact with one another through participation in the same BitTorrent swarm."); *Pac. Century Int'l v. Does 1-31*, No. 11 C 09064, 2012 WL 2129003, at *2 (N.D. Ill. June 12, 2012) (holding that joinder was proper when the plaintiff alleged that the "anonymous defendants participated in the same 'swarm' (at varying times spanning just over one month)"). The federal appellate courts have not yet addressed this BitTorrent-specific joinder issue.[3]

reFX asserts that its joinder theory is based on three factors: (1) all of the Does participated in the same swarm by uploading reFX's software file with the same hash identifier to reFX's investigator; (2) all of the Does' IP addresses are traced to Illinois; and (3) the Does' combined swarm activity spanned the same one-month period.[4] Pl.'s Resp. Br. Opp'n Does' Mot. Sever at 13; *see also* R. 14 (No. 13 C

---

[3]There is an appeal pending in the D.C. Circuit that addresses this issue, but the court will not hear oral argument until April 14, 2014. *See AF Holdings, LLC v. Does, 1-1058*, No. 12-7135 (D.C. Cir. Feb. 18, 2014), Doc. No. 1480299.

[4]reFX also argues that joinder is proper because some of the Does are likely duplicates of each other. R. 30 (No. 13 C 01793), Pl.'s Mot. Compel Reply Br. at 10; *see also id.* (estimating that around 8.5% of the Does are duplicates). This duplication likely arises

03524), Pl.'s Supplement Mot. Early Discovery at 1. But, when all is said and done, reFX's permissive-joinder theory is based only on a swarm of users downloading and uploading a copy of the software with the same hash identifier. Two of the three factors—geography and the one-month time period—were self-imposed by reFX and really have nothing to do with defining a "transaction or occurrence" for joinder purposes. This is true because, in reality, the swarm is not actually limited by geographic boundaries; instead, geography only enters the equation because of personal-jurisdiction concerns. *See* Compl. ¶ 3. As reFX itself alleges in its complaint, "each swarm member is helping all other swarm members participate in illegal file sharing, regardless of geographical boundaries." *Id.* ¶ 20; *see also id.* ¶ 21 (alleging that swarm members are "linking together globally" through a "worldwide network"). And, with regard to the time-period limit, there is no reason—at least no reason based on the transaction-or-occurrence standard—why reFX limited the infringement in these cases to a one-month period. *Cf. id.* ¶ 8 (noting that reFX "elected" to set these limits). Just as a swarm is not limited geographically, a swarm is also not defined by a specific time-frame. *See* Pl.'s Supplement Mot. Early Discovery at 2 (admitting that the infringement extended beyond the one-month period it selected). The one-month period instead provides another way to limit the number of Does. Although that makes sense for purposes of judicial efficiency and fairness to the parties, that limitation does nothing to help define a "transaction or

---

when ISPs rotate and recycle IP addresses. *Id.* As a result, multiple IP addresses may be linked to the same person. *Id.* Mistakenly including duplicate Does, however, says nothing of whether any of the Does are part of the same series of transactions or occurrences. It simply means that there are potentially fewer Does in each lawsuit.

occurrence." Therefore, after eliminating the geography and temporal-proximity factors, reFX's permissive-joinder definition is, at bottom, based solely on a single swarm for the unique hash identifier in this case.

That definition of transaction or occurrence (or a series of transactions or occurrences) is too broad. To be sure, there is no hard-and-fast definition of "transaction or occurrence," whether for purposes of Rule 20(a)(2) permissive joinder or other Rules in which the same terms are used, such as what compulsory counterclaims must be brought under Rule 13(a)(1)(A) and what claims or defenses relate back to prior pleadings under Rule 15(c)(1)(B). "[T]here is no formalistic test for determining whether suits arise out of the same transaction or occurrence. Instead, we have held that courts should consider the totality of the claims, including the nature of the claims, the legal basis for recovery, the law involved, and the respective factual backgrounds." *Ross v. Bd. of Educ. of Twp. High Sch. Dist. 211*, 486 F.3d 279, 284 (7th Cir. 2007) (internal quotation marks and citation omitted) (interpreting transaction or occurrence for compulsory counterclaims under Rule 13(a)(1)(A)). Those considerations take into account *legal* issues ("the legal basis for recovery, the law involved"), *factual* issues ("the respective factual backgrounds"), and issues involving a combination of the two ("the nature of the claims"). Similarly, in the context of relation back under Rule 15(c)(1)(B), a claim or defense arises out of the same "conduct, transaction, or occurrence" as a previously pled claim or defense if both claims or defenses arise from a "common core of operative facts." *Mayle v. Felix*, 545 U.S. 644, 659 (2005) (internal quotation marks

and citation omitted). That formulation, too, does not focus exclusively on facts, but also on how the facts intersect with the law, that is, which facts are *operative* depends on the law that applies to the claim. Courts must avoid viewing the transaction-or-occurrence standard at "too high a level of generality," *Mayle*, 545 U.S. at 661 (internal quotation marks and citation omitted), lest claims be capaciously joined in one lawsuit even though the only thing they have in common is a solitary fact or set of facts that are not tied together in both law and in fact.

To demonstrate how reFX's single-hash-identifier theory of joinder casts transaction or occurrence (or series thereof) at too high a level of generality, consider that reFX's theory would allow defendants to be joined even though they have no direct connection with one another (that is, they did not download or upload to one another) and, worse, even though they have only the most tenuous of *indirect* connections to one another. Here is a simplified diagram of what reFX would consider a properly joined swarm, where Doe 1 seeded the swarm and distributed to Does 2 to 4, and then those Does distributed to other Does, and so on:



Under reFX's theory, Doe 101 is properly joined with Doe 460, even though those two Does have not directly downloaded or uploaded from one another, and indeed, it takes four levels of download/uploads to get from Doe 101 back to Doe 1, and then another four levels of downloads/uploads to get to Doe 460. No fact of any kind concerning Doe 460 need be proven, or would even be relevant, to showing that Doe 101 engaged in copyright infringement. Yet under reFX's joinder theory, all of the Does in the illustration above could be properly joined because they have all participated in the same swarm. *See* Pl.'s Mot. Compel at 10 (noting that each Doe's participation in the swarm "leads to viral infringement through multiple successive generations of infringers"). This application of "series" of transactions or occurrences is at too high a level of generality, sweeping in Does who are multiple (maybe even hundreds or thousands of) levels away from Doe 1. All told, reFX is treating the *459* downloads/uploads[5] that would be depicted in the diagram as *one* transaction or occurrence, or *one* series of transactions or occurrences. And, in reality, the lack of connection between those Does is even more gaping because this is a simplified diagram of a swarm. In the real world of BitTorrent, the distributions to the Does do not comprise the entirety of the copyrighted software; instead, due to the nature of BitTorrent, almost surely the Does are distributing (and others correspondingly downloading) only *pieces* of the software, so Doe 101 (for example) really downloads pieces of the software from many different Does (not just Doe 11).

---

[5]In the diagram, the set of 459 downloads/uploads is comprised of 3 in the first level (Doe 1 to Does 2 to 4), plus 6 in the second level (Does 2 to 4 to Does 5 to 10), plus 18 in the third level, plus 72 in the fourth level (if Does 11 to 18 each distribute to four other Does), plus 360 in the fifth level (if Does 29 to 100 each distribute to five other Does).

So reFX's joinder theory really would treat many, many more than 459 downloads/uploads all as one transaction or occurrence, or one series thereof.

As the case law demands, the correct view of transaction or occurrence (or a series thereof) must take into account the nature of the claims, the legal basis for recovery, and the factual background. Rule 20(a)(2)(A) asks whether the "right to relief" arises out of the same transaction or occurrence, and in the BitTorrent context, reFX asserts a "right to relief" from copyright infringement. Under the Copyright Act, that right includes relief from both copying (downloading) and distributing (uploading) the copyrighted work. *See* 17 U.S.C. § 106(1) (reproduction); *id.* § 106(3) (distribution). Given this right to relief, the joinder analysis in BitTorrent cases should focus on the direct exchange of the copyrighted work (or pieces of it)—both downloading and uploading—between Does in a particular swarm. A plaintiff may only join as defendants those swarm members who have directly exchanged a part of a copyrighted work (identified by the same unique hash identifier) with one particular individual. In other words, a plaintiff can join with any one alleged infringer all the other alleged infringers who downloaded content directly from or uploaded content directly to that same infringer. This rule— requiring the actual exchange of data—takes into account both the factual and legal bases of the claim because proving the actual exchange of data is a requirement for the underlying substantive copyright-infringement claim itself.

A simplified illustration of how this joinder rule works may help:



Start with Doe 1. Doe 1 downloaded the copyrighted work from Does 2, 3, and 4. Doe 1 then uploaded the work to Does 5, 6, and 7. Because Does 2 through 7 directly exchanged parts of the work with Doe 1, they are all part of the "same . . . series of transactions or occurrences" that gave rise to the right to relief against Doe 1. Fed. R. Civ. P. 20(a)(2)(A). All the Does that have exchanged data with Doe 1 are related by the right to relief, and there will be substantial evidentiary overlap in the facts giving rise to the claims against Does 2 through 7 because their exchange of data with Doe 1 will be central to each claim. *See In re EMC Corp.*, 677 F.3d at 1358. Does 8 through 15, on the other hand, only indirectly exchanged parts of the work with Doe 1. They are therefore too far removed to be part of the "*same* . . . series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2)(A) (emphasis added). Instead, Does 8 and 9, for example, are part of an entirely different series of transactions with Doe 2. They are one level removed from the series of transactions that gave

16

rise to the right to relief against Doe 1. In short, Does 2 through 7 can be joined in the lawsuit against Doe 1, but Does 8 through 15 cannot.

As reFX's claims are currently pled, the Does in these lawsuits are not properly joined. reFX submitted declarations from the investigator it retained to identify the Does, *see, e.g.*, R. 8 (No. 13 C 03524), 5/7/13 Padewet Decl., but those declarations do not show proper joinder as defined by this opinion. According to the investigator, someone at the investigator's company, Copyright Defenders, searched for BitTorrent users who were offering to distribute reFX's software. *Id.* ¶ 23. Copyright Defenders then downloaded a copy of the software from those users, verified that the file contained the same unique hash identifier, and made note of the users' IP addresses and other information. *Id.* ¶¶ 23, 25. reFX has also provided charts purporting to illustrate the date-and-time overlap between Does in the swarm. *See, e.g.*, R. 14-1 (No. 13 C 03524), Pl.'s Exh. A. reFX argues that these charts demonstrate the Does' "collective participation" in the swarm and confirm that multiple Does were in the swarm at the same time. *See* Pl.'s Supplement Mot. Early Discovery at 1-2; *see also* R. 16 (No. 13 C 1793), Pl.'s Mot. Compel Br. at 10.

Ultimately, the investigator's declarations and reFX's charts do not sufficiently allege facts that satisfy this Court's definition of proper joinder. Because the actual exchange of data is required, reFX must allege that a certain group of Does all exchanged data with the same individual, giving rise to the same right to relief. While it is true that properly joined swarm members will likely overlap for some amount of time, temporal proximity alone is not controlling because, as a

swarm is generally conceptualized, all members need not be in the swarm at the same time. Returning to the example above, they simply must overlap at some point in time with Doe 1 so that it can plausibly be inferred that they all directly either downloaded to Doe 1 or uploaded from Doe 1 (or both). It is the actual direct exchange of data with Doe 1 that renders proper the joinder of multiple defendants with that particular Doe.[6]

Finally, given that each lawsuit spans a one-month period of alleged infringement, it is unlikely that the charts represent only one download attempt[7] or right to relief. Instead, it is much more likely that the investigator joined a swarm for this software on multiple occasions and made multiple attempts to download the software. Each successfully completed download attempt represents a new series of transactions or occurrences that must be the basis of a separate and independent lawsuit.

## IV. Conclusion

For the reasons stated above, the Does' motions to quash or to sever [R. 20, R. 24 (No. 13 C 03524); R. 23 (No. 13 C 07494)] because of improper joinder are

---

[6]It is possible that the hypothetical "Doe 1" in these types of cases will not actually be a Doe Defendant, but instead be the plaintiff's retained investigator. Regardless of who "Doe 1" is, though, the controlling issue for proper joinder in BitTorrent cases is the actual exchange of data. As far as what this means at the pleading stage, joinder is properly "pled" if the data shows that the sued Does were online at the same time as the one Doe (or investigator) chosen to be Doe 1. Simultaneous online timing might even be enough circumstantial evidence for the ultimate proof of copyright infringement, but the Court need not decide that here.

[7]The Court uses the word "attempt" here because it is not clear from the declaration whether the investigator ever downloaded a complete version of the file or instead simply joined the swarm just long enough to download a "part" of the file and then identify the IP addresses of the Does. *See* 5/7/13 Padewet Decl. ¶¶ 23-25 (admitting that Copyright Defenders would only download a "part" of the file).

granted. As a formal matter, reFX's motion to compel [R. 15 (No. 13 C 01793)] and AT&T's motion to quash [R. 36 (No. 13 C 01793)] are therefore denied as moot. Practically, though, because reFX has not demonstrated that the Does in these four lawsuits are properly joined, the non-party subpoenas pending in all of these lawsuits will not be issued. By April 7, 2014, reFX may file amended complaints in each of these lawsuits that plausibly allege claims for relief that are properly joined, as defined by this opinion. Any Does that are sued in the current complaint but who are not properly joined must not be sued as defendants in the amended complaint. A status hearing in all of these cases is set for April 11, 2014, at 10 a.m.

ENTERED:

      s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 24, 2014